

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS
### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable D. P. Parker
County Attorney
Comanche County
Comanche, Texas

Dear Sir:

Opinion No. O-2800
Re: Proper basis of valuation for ad
valorem tax purposes, of proper-
ties of Comanche County Electric
Cooperative Association, by the
Board of Equalization of Eastland
County, under Articles 7174 and
7149, Vernon's Annotated Revised
Civil Statutes of Texas.

It appears from your letter of October 2, 1940, and
correspondence thereto attached, that a controversy has developed
between the Commissioners' Court of Eastland County, sitting as
the Board of Equalization, and two certain independent school dis-
tricts in said County, regarding the proper basis for assessing
the properties of the Comanche County Electric Cooperative Asso-
ciation for ad valorem taxation purposes under the governing
statutes. As we interpret your letter, the Board of Equaliza-
tion has recognized the contention of the taxpayer, Comanche County
Electric Cooperative Association, that a valuation based upon the
amount received at a private sale of the properties, if any such
were possible, or based upon construction costs would be confis-
catory and arbitrary because of the low earning power of the pro-
perties. On the other hand, the two independent school districts
in question contend that the Board should proceed to assess and
value the property upon the basis of construction cost alone. In
short, the issue is whether the earning power of the taxpayer's
properties, often referred to as the capitalization of net earn-
ings method, should be given paramount consideration by the Board
in this tax valuation.

It is further pointed out that the Comanche County
Rural Electrification Administration, a corporation organized un-
der the R. E. A., has, as of January 1, 1940, constructed approxi-
mately sixty-four miles of completed power lines at a cost of a-
bout $490.00 per mile, for the purpose of furnishing electrical

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

energy to the rural sections of Eastland County, not with an object of profit but of service to the agricultural community. However, it is stated that the low income return is not due to the non-profit character of the enterprise, but to the thinness of the territory served by it, and the relatively high investment in fixed properties in comparison with earning power, a condition which has prevented private utilities from serving these rural areas.

To resolve this controversy you ask the following question:

"What should be the principles that the Commissioners' Court should adopt in arriving at fair and just taxation?"

Article 7174, of Vernon's Annotated Civil Statutes of Texas, 1925, as amended, sets up certain requirements relating to the valuation of real and personal property for ad valorem tax purposes. The article in question provides, in part, as follows:

"Each separate parcel of real property shall be valued at its true and full value in money, excluding the value of crops growing or ungathered thereon.

"In determining the true and full value of real and personal property the assessor shall not adopt a lower or different standard of value because the same is to serve as a basis of taxation, nor shall he adopt as a criterion of value the price for which such property would sell at auction or a forced sale or in the aggregate with all the property in his county; but he shall value each tract or lot by itself, and at such sum and price as he believes the same to be fairly worth in money at the time such assessment is made. . . .

"Personal property of every description shall be valued at its true and full value in money."

Article 7149 of Vernon's Annotated Revised Civil Statutes of Texas, 1925, as amended, provides as follows:

"The term, 'true and full value', wherever used shall be held to mean the fair market value, in cash, at the place where the property to which the term is applied shall be at the time of assessment, being the price which could be obtained therefor at private sale, and not at forced or auction sale."

The terms "market value," "fair market value," "cash market value," "fair cash market value" and "true and full value in money" have been held to be synonymous terms. 40 Tex. Jur. 150.

"Market value" or "fair market value" has been defined as "the amount of money that a person desiring to sell, but not bound to do so, could, within a reasonable time procure for such property from a person who desires and is able to buy, but is not bound to purchase the property. It is the amount that could be obtained at private sale and not a forced or auction sale." 40 Tex. Jur. 150.

Under this definition and the facts before us, we think it may be assumed that the properties of the Comanche County Electric Cooperative Association, located in Eastland County, either have no actual "market value," due to the single purpose and multi-county nature of the property and its consequent want of a ready market as other realty and personalty, commonly bought and sold; or if a market value may be said to exist, it is so disproportionate to the original cost of the properties, less depreciation, or the reproduction cost, less depreciation, as to afford no reasonable and proper basis for valuation by the Board of Equalization of Eastland County.

Thus we see that the broad and dominant criterion prescribed by the Legislature for the valuation of property for tax purposes, i. e. the reasonable cash value of the property on the market, or what it can be bought and sold for, is difficult if not impossible of application as the sole factor of value. Consequently upon this assumption, we turn to the decisions of this and other jurisdictions to determine the accepted and recognized methods of valuing property for tax purposes in such situations.

Intrinsic value is not mentioned in the statute that defines the powers of the Board of Equalization (R.S., Art. 7206) but it is only stated that the Board shall "cause the assessor to bring before them at such meeting all assessment lists, etc. . . . . to see that every person has rendered his property at a fair market value." (emphasis ours.)

It has been noted that "fair market value" is the basis required of the Assessor under Article 7174. In this connection it may be pointed out that Article 7211, Vernon's Annotated Revised Civil Statutes, provides that "if such property shall be found to have no market value by such officer (the assessor), then at such sum as said officer shall deem the real or intrinsic value of the

property." Therefore, it seems that the Board, as well as the Assessor, may and should determine value according to intrinsic worth in instances where the property in question has no market value. 40 Tex. Jur. 149.

Whether or not the properties involved here, due to low or non-existant earning power, or to the nature of the properties and the use to which they are put, have or do not have a "fair market value," so as to enable the Board of Equalization to determine the "true and full value in money" of the property on the basis of the price which such property would bring at private sale, pursuant to the literal terms of the above quoted statutes, is a pure question of fact which this Department is not competent to pass upon, and it is not, by this opinion, understood to be so doing. However, assuming from the facts stated, the absence of an established market value for these properties which would represent the "true and full value" thereof, it is our opinion that the Board of Equalization, in arriving at intrinsic value for tax purposes, may properly and legally consider all pertinent facts, estimates, forecasts and circumstances brought to its attention or established and recognized as fundamentally essential and reasonably related to the question of value, either under the principles of common law or common sense. The Legislature has vested in Boards of Equalization, as constituted by statutes, the sole discretion in the valuation and the equalization of the values of property subject to taxation. Their action is clothed with the presumption that it has been rightly made on the basis of actual value and courts will decline to disturb such assessments unless shown to be arbitrary and grossly excessive or based upon a fundamentally wrong principal or method of determining value. 40 Tex. Jur. 158, Great Northern Railway Company v. Weeks, 297 U.S. 195; 80 L. Ed. 532.

Certainly if the courts are loath to disturb the discretion of Boards of Equalization in discharging their statutory duties of assessing and valuing property for taxation, then, with stronger reasons, this Department cannot properly, in advance of the exercise of such discretion by the Equalization Board of Eastland County, outline and prescribe, by the requested opinion, any system, formula, rule or method for the control and guidance of said Board in the discharge of its duties. Nor can said Board be compelled to submit to examination as to the operation of their minds in arriving at the "true and full value" of the property before them.

On the other hand, we think we may properly point out some of the formulas or systems commonly used by tax officials

in valuing property for taxation and approved by the courts, where market value is non-existant. Some of these are: (1) original cost or reproduction cost, less a reasonable annual depreciation; (2) "the stock and bond method," or the average market price of the outstanding stocks and bonds of a corporation; Great Northern Railway Co. v. Weeks, supra; (3) "the capitalization of net operating income method;" 26 R.C.L. 367, 368; Great Northern Railway Co. v. Weeks, supra; Parsons, et al v. Detroit & Canada Tunnel Co., et al, 15 Fed. Supp. 986, aff. City of Detroit v. Detroit & Canada Tunnel Co., 92 Fed. (2) 33.

The last formula or method for accurately determining the "true and full value" of property for taxation purposes by tax assessing officials and boards has been, by the courts, in the cited cases and others, approved as being particularly applicable to railroads and public utilities of various kinds such as ferrys, bridges, canals, toll roads, pipe lines and electric power and service companies, such as the one involved in the instant case. The "capitalization of net income method" may be stated as follows:

"When property has a known and determinate value ascertained by commerce in it, as in many kinds of personal property and in certain classes of real estate, there can be no difficulty in ascertaining its value for purposes of taxation. In many cases, however, the assessor has no such satisfactory guide, and must value the property by other means. In such cases, if the property is devoted to the use for which it was designed, and is in a condition to produce its maximum income, one very important element for ascertaining its present value is the net profits derived therefrom. In such a case the tax is not levied upon the earnings as such, but the earnings are treated as a guide to the capital value. The value of the property is arrived at by capitalizing the net income therefrom at the rate of return prevailing in the same section of the country upon investments of a similar character. In determining the net income of any item of property as a basis for valuation for the purpose of taxation, the average net income for a number of years should be considered, rather than the earnings of a single year standing alone. It is, however, the earning capacity of the property as distinguished from the

Honorable D. P. Parker, Page 6

actual earnings that is the proper element for con-
sideration in fixing the valuation of property for
taxation. . . ."  26 R.C.L. 367.

In upholding the "capitalization of net earnings" prin-
ciple for the guidance of tax officials in the valuation of pub-
lic utility properties over the other systems or formulas above
enumerated, under statutes almost identical to those which govern
here, the court, in the case of Persons v. Detroit & Canada Tun-
nel Co., supra, said:

"The original, or reproduction, construction
cost of this tunnel is so enormous that there is
absolutely no apparent relation between such cost
and its earning capacity. Nor does such cost ap-
pear to have any possible bearing upon such earning
capacity. If nature had constructed this tunnel
in its present form, it would be as valuable to its
owner as it now is. It would be as valuable to the
owner or a prospective purchaser, regardless of its
original cost. Its cost does not always enter into
the question as to what price a purchaser would pay
or a seller would take. The basis for a sale price
would be the present, and probable future, earning
power of the property; and certainly present and
past earnings are proper and important factors in
judging what earnings may fairly be expected in the
future.

"Therefore it is the conclusion of the court
that the tunnel property here involved is of such
character as to be usable for a single purpose only;
that it is devoted to the public service under reg-
ulations and methods of operation, as to classify
it as a public utility; also that the capitalization
of earnings method should have been given controlling
consideration and effect by the assessing officers
in arriving at the true cash value of the property,
within the meaning and scope of the applicable Mich-
igan statutes; that the taxing authorities, in basing
their valuations for the three years in question
entirely upon depreciated cost, and in failing to
give any consideration or weight to the capitaliza-
tion of net income method, have adopted a fundamental-
ly erroneous principle or method of arriving at the
true cash value of the property in question, in viola-
tion of the due process clause of the Fourteenth
Amendment to the Constitution of the United States,

and the resulting assessments are therefore illegal
and void. . . ."

We reiterate that the proper formula, method or principle to guide the Board of Equalization of Eastland County in the performance of their statutory duties of determining the "true and full value" of the properties of the Comanche County Electric Cooperative Association, is not ours to decide, but rests squarely and solely within the sound discretion of the said Board. It is their province to hear the evidence and weigh the facts, circumstances and conditions surrounding the properties in question and therefrom determine which of the three methods, formulas or principles suggested hereinabove, or any others, singly or in combination, will be best adapted to the peculiar facts of this case. In other words, this opinion should not be understood to hold that the "capitalization of net income method" is the only one applicable to the facts of this case, to be exclusively and solely followed by the Board. We are merely pointing out that such method may be lawfully considered by the Board, if it appears from the facts adduced before them that such method is best calculated to arrive at the "true and full value" of the property. But, if any other method, principle or formula, whether discussed herein or not, appears to the Board to better establish such "true and full value," then said Board is at liberty to follow such method, subject, of course, to review by the courts in the manner herein discussed.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _____
Pat M. Neff, Jr.
Assistant

PMN:db          APPROVED DEC 11, 1940

ATTORNEY GENERAL OF TEXAS